1
2
3
4
5
6
7
8

LAW OFFICES OF LINGEL H. WINTERS
LINGEL H. WINTERS, ESQ. - State Bar No. 037759
A Professional Corporation
One Maritime Plaza, Suite 400
San Francisco, CA 94111
Telephone:    (415) 398-2941

GIRARDI & KEESE
THOMAS V. GIRARDI, ESQ. State Bar No. 36603
1126 Wilshire Blvd.
Los Angeles, CA 90017-1904
Telephone (213) 977-0211

Counsel for Plaintiffs

9
10
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. C07-1827 SI |
| THIS DOCUMENT RELATES TO | No. C-07-2796 SI |
| *EMW, Inc. v. LG Philips LCD Co., Ltd. et al.* | |
| Case No. C-07-2796 SI and | NOTICE OF MOTION AND MOTION TO APPOINT INTERIM CLASS COUNSEL FOR THE CALIFORNIA INDIRECT PURCHASERS SUBGROUP |
| ALL INDIRECT PURCHASER ACTIONS | |
| | DATE: July 10, 2007 |
| | TIME: 10:00 a.m. |
| | Hon. Susan Illston |
| | Courtroom: 10 |

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2        PLEASE TAKE NOTICE that on July 10, 2007 at 10:00 a.m. or as soon thereafter as

3    the matter can be heard, before the Honorable Susan Illston of the United States District Court,

4    Northern District of California, 450 golden Gate Avenue, San Francisco, Calfornia, the

5    undersigned law firms and counsel will and hereby do move for an order appointing them as

6    Interim Class Counsel for the putative California Indirect Purchaser Subclass in these

7    consolidated actions, and establishing pretrial procedures to govern same.

8        This motion is brought pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

9    The grounds for this motion are that management of this complex case will benefit from the

10   appointment of Interim Class Counsel for the putative California Indirect Purchaser Subclass and

11   as set forth in the accompanying Motion and Memorandum of Points and Authorities, and that the

12   undersigned firms and counsel are well qualified for the position due to their experience in

13   antitrust class action litigation and trials and other complex litigation. This motion is based on this

14   notice of motion and motion, and the supporting memorandum of points and authorities, the

15   Declaration of Lingel H. Winters and the Proposed Order filed or submitted herewith, any papers

16   filed in reply, such argument as may be presented at the hearing, and all other papers and records

17   on file in this matter.

18
19       DATED: JUNE___, 2007             GIRARDI & KEESE

20                                  LINGEL H. WINTERS P.C.

21                                  /S/

22                                  LINGE H. WINTERS

23
24
25
26
27
28

1

## INTRODUCTION

2      Plaintiff EMW, Inc. is a California TFT-LCD indirect purchaser "end user" as alleged

3   in *EMW, Inc. v. L.G. Philips LCD Co. Ltd. et al.*, No. C-07-2796-SI (Compl. para. 7), a related

4   case to In Re TFT-LCD (Flat Panel) Antitrust Litigation No. 07-1827 SI. Plaintiff EMW, Inc.

5   submits this Motion to appoint Plaintiff EMW, Inc.'s counsel Lingel H. Winters P.C. and its co-

6   counsel Girardi & Keese, as the TFT-LCD Interim Class Counsel for the California Indirect

7   Purchaser Subgroup. Lingel H. Winters PC previously served on the Plaintiffs' Executive

8   Committee in *In Re Microsoft I-IV Antitrust Cases*, J.C.C.P.4106, 135 Cal. App.4th 706 (2006),

9   which resulted in a settlement for California indirect purchasers of Microsoft software valued at

10  $1.1 Billion. The *Microsoft* case demonstrates what an independent California case can

11  accomplish for a class of California indirect purchasers. The structural issue raised here, that

12  since California indirect purchasers have a commonality and significant size, they constitute a

13  separate subgroup of the instant TFT-LCD (Flat Panel) Antitrust Litigation, is an issue that the

14  Court is best equipped to address.

15  I.     **The California Indirect Purchaser Subgroup Possesses the Requisite Commonality**

16         **And Significant Size For An Independent Subgroup**

17      First, California indirect purchasers are governed by a common body of law, and they

18  comprise a substantial class unto themselves. The California Cartwright Act (Cal. Bus. & Prof.

19  C. sec. 16750) provides a common basis for the California indirect purchasers' antitrust claims,

20  and by specific legislative amendment, it contains a repealer provision for indirect purchaser

21  claims, which repeals the applicability of the direct purchaser rule adopted by the Supreme Court

22  relative to the Sherman Act in *Illinois Brick Co. v. Illinois* 431 U.S. 720 (1977). The state

23  repealer has been upheld by the U. S. Supreme Court. *California v. ARC America Corporation*

24  (1989) 490 U.S. 93, 104 L Ed 2d 86, 109 S. Ct. 1661. In addition, California has adopted the

25  Unfair Competition Law (UCL), Bus. & Prof. C. sec. 17200, which, unlike the laws of many

26  states, enables Californians to broadly pursue claims that are illegal, unfair or fraudulent,

27  including antitrust claims. In this connection, the California courts have held that the UCL

28

1

1    "borrows" claims, such as antitrust claims, that are illegal under other statutes such as the

2    Cartwright Act or the Sherman Act. *People Ex Rel. Bill Lockyer v. Fremont Life Ins. Co.* 104 Cal.

3    App.4[th] 508, 515-517 (2002).

4            These statutes give California indirect purchasers alternative antitrust weapons. By

5    contrast, the majority of states lack the *Illinois Brick* repealer amendment, available under

6    California's Cartwright Act, that empower indirect purchasers to sue. In fact, apart from

7    California, there are only nineteen Other Repealer States before the Court whose antitrust statutes

8    specifically authorize suits by indirect purchasers. The population of California alone makes up

9    approximately 35% of the populations of all the states that have enacted *Illinois Brick* repealer

10   statutes empowering indirect purchasers to sue under each of their state's laws. This is because,

11   apart from California, the Other Repealer States, with state antitrust repealer statutes empowering

12   indirect purchasers to sue that are before this Court, are states with comparatively small

13   populations - Alabama, Arizona, District of Columbia, Iowa, Kansas, Maine, Michigan,

14   Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South

15   Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.[1] Since the antitrust case law of

16   those states that have antitrust statutes with repealer amendments is different, they lack the

17   commonality essential to a single, unified class.

18   Since the laws of Other Repealer States and Other Consumer Protection Law States differ from

19   the law of California, they lack the commonality for a single, unified class; thus, the courts have

20   adopted the practice of establishing subclasses to supply the commonality necessary for class

21   certification. In *Walsh v. Ford Motor Co.* (D.C. Cir. 1986) 807 F.2d 1000, 1017, the Court held

22   that one seeking a nationwide class comprised of various state law claims must make a showing

23   involving an "'extensive analysis' of state law variances" to demonstrate that such variances can

24   be effectively managed through creation of subclasses of states with similar legal doctrines. In *In*

25

26   [1] The National Geographic Atlas of the World, Revised Sixth Edition  (1996) at pp120-121 sets forth total
     populations for these Other Repealer States of  58,041,000 by contrast to California's population of  31,431,000.

27   Thus, California's population makes up 35% of the total potential antitrust repealer state population.  However, the
     presence of Silicon Valley means that the computer user rate in California is higher than for the rest of the United

28   States. Thus, California probably accounts for at least 50% of the indirect purchaser TFT-LCD Flat Panel purchases
     in the repealer states whose antitrust laws are before the Court.

2

1    *re School Asbestos Litigation* 789 F.2d 996 (3rd Cir. 1986), the Third Circuit found that the

2    plaintiffs' 'extensive analysis of the variances in products liability among the jurisdictions,'

3    'separat[ing] the law into four categories,' or subgroups constituted such a showing. Accord: *In*

4    *Re General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation* 55F.3d

5    768, 818 (3rd Cir. 1995). In the instant case, the Zelle, Hofmann-Furth firms in their *Eliasoph v.*

6    *LG Philips LCD Co., Ltd.* complaint (Case Nol C-06-7588 SI) identified three natural subgroups

7    seeking monetary recovery:

8      1) Subgroup One: California (*Eliasoph* Second and Third Claims)

9      2) Subgroup Two: Other Repealer States with laws involving "Violations of State Antitrust

10        and Unfair Competition Laws." (*Eliasoph* Fourth Claim).

11      3) Subgroup Three: States under whose laws are claimed "Violations of State Consumer

12        Protection and Unfair Competition Laws."(*Eliasoph* Fifth Claim).

13    The first such subgroup in the *Eliasoph* complaint are California claimants under the California

14    Cartwright Act and the California Unfair Competition Law alleged in the Second and Third

15    Claims for Relief. The second group of states identified in the Fourth Claim for Relief in the

16    *Eliasoph* complaint are those under whose laws are claimed "Violations of State Antitrust and

17    Unfair Competition Laws," which involves a batch pleading of the Other Repealer States'

18    antitrust laws: Alabama, Arizona, District of Columbia, Iowa, Kansas, Maine, Michigan,

19    Minnestota, Missippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South

20    Dakota, Tennessee, Vermont, West Virginia, and Wisconsin. [Pennsylvania is pled, but it has no

21    repealer statute]. The third group of states identified in the Fifth Claim for Relief in the *Eliasoph*

22    complaint are those under whose laws are claimed "Violations of State Consumer Protection and

23    Unfair Competition Laws," including twenty-one or so states ranging from Alaska to Wyoming.

24    Thus, the *Eliasoph* complaint establishes three natural subgroups, which is the mechanism

25    recognized in *Walsh, supra, School Asbestos, supra, and In re General Motors, supra*, for

26    securing manageability and protecting a unified and sizeable California subgroup from the

27    differing and varied legal issues confronting claimants under the laws of the Other Repealer

28    States and the Other Consumer Protection states. By structuring the initial leadership of this case

3

1  along the above subgroups lines drawn by the *Eliasoph* complaint, the Court, at the outset will

2  have enhanced manageability and judicial economy for the case.

3      Moreover, indirect purchasers in states not having antitrust statutes with repealer amendments

4  are obliged to rely on a variety of different consumer statutes as the basis for their claims, which

5  vary markedly from state to state.  For instance, some consumer statutes narrowly define the

6  "consumer goods and services" covered by the statute and some call for the purchaser to use the

7  purchased item for "household purposes."  E.g. Rhode Island Gen. Laws sec. 6-13.1-1 *et seq.*

8  Thus, businesses who are indirect purchasers would be excluded from such a class setting up an

9  immediate conflict between indirect purchasers who purchase for individual household purposes

10  from business purchasers.  Some of the Other States preclude representative actions such as

11  Louisiana, (See La. Rev. Stat. Sec. 51:1409(A)[plaintiffs "may bring an action individually but

12  not in a representative capacity to recover actual damages") *Morris v. Sears* Roebuck *& Co.* 765

13  So. 2d 419, 421 (4th Cir. 2000)(Lousiana state "expressly prohibits a private class action."; Mont.

14  Code Ann. Sec. 39-14-133(1) (consumers "may bring an individual not a class action"); S.C.

15  Such conflicting interests preclude adequate representation.

16      In addition, this Court was selected by the MDL panel in part because of the predominant

17  number of California cases involved. (MDL Order dated 4/17/07 at pp. 1-2).  The California cases

18  filed in the Northern District are here for trial, the cases transferred from other jurisdictions have

19  been sent here for discovery, but not for trial. *Lexecon, Inc. v. Milberg,, Weiss et al.* (1998) 523

20  U.S. 26, 140 L.Ed.2d 62, 118 S.Ct. 956.  In fact, one of this Court's options is to divide the class

21  into subclasses, but another option is to continue the transferred cases as "multi-district litigation

22  for the remainder of pre-trial discovery," then re-transfer them to their originating jurisdictions

23  for trial. *In Re General Motors Pick-Up Truck Fuel Tank Products Liability Litigation, supra,* at

24  p.818. The Court should preserve its options by creating an independent California Subgroup at

25  this time with independent counsel.

26  **II. Class Representatives Can Only Provide Adequacy Of Representation To**
27     **Members Of Their Own Subgroup With Whom Their Interests Are Aligned**

28      In *Amchem Products v. Windsor* (1997) 521 U.S. 591, 625-628; 177 S.Ct. 2231; 138 L.Ed 2d

4

689, the failure to promptly address a subgroup conflict resulted in years of lost work for the

district court and counsel, resulting in reversal of a class action settlement by the U.S. Supreme

Court. In *Amchem*, *supra*, the Supreme Court rejected the settlement of an overbroad class in part

because

> "the interests of those within the *single class* are not aligned. Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal *tugs against* the interests of exposure-only plaintiffs in ensuring an ample inflation-protected fund for the future." (at 521 U.S. 626.) (Emphasis added).

Likewise, the goal of California claimants *tugs against* the interests of claimants from

Other Repealer States whose claims arise from different state statutes. Since claims under

different state statutes have variances in strengths and weaknesses, there are conflicts in

allocating any settlement or recovery among the differing state claimants. Thus, the interests of

Californians and claimants from other States are not aligned and Californians could not be

adequately represented by an executive committee that also represents claimants under other

States' laws whose claims are not aligned. As stated in *Moore's Federal Practice* 3d Ed., Vol. 5

at para. 23.25[2][a] "Because any conflict of interest between the named representative and class

members would undermine the fiduciary relationship and would impugn the duty of loyalty,

courts use the adequacy-of-representation analysis to uncover conflicts of interest between the

named plaintiffs and the class they presume to represent."

The Supreme Court, in *Amchem*, quoted the Second Circuit as follows:

> 'But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by the consents given by those who understand that their role is to represent *solely* the members of their respective subgroups. *In re Joint Eastern and Southern Dist. Asbestos Litigation*, 982 F.2d 721, 742-743 (1992), modified on reh'g *sub nom. In re Finley*, 993 F.2d 7 (1993). ( at 521 U.S. 627). (Emphasis added).

In other words, counsel has authority to represent and bind only a subgroup with interests

aligned with his client's own interests, to whom he can give undivided loyalty, not the non-

aligned interests of both the California subgroup whose interests are in conflict with the

subgroups whose claims are made under the laws of other States. This restriction on the authority

of counsel was recognized as an ethical limitation on counsel from representing "potentially

5

differing interests" in *Piambino v. Bailey* (11th Cir. 1985) 757 F.2d 1112, 1144-1147, fn. 84.  But the *Piambo* court at fn. 88 also noted:

> "Appropriate action in the instant case would have involved, at the very least, the designation of the Minority Group as a sub-class with the right to have separate counsel unbeholden to Lead Counsel."

The Ninth Circuit has approved the use of subclasses to avoid conflicts.  *Blackie v. Barrack* (9th Cir. 1975) 524 F.2d 891, 908-911, and uphold certification.  As noted in *Moore's Federal Practice*, 3d Ed. Vol. 5 at para. 23.25[2][f][6] inadequacy of representation due to conflicts can be cured by establishing subgroups, which should be established when counsel are appointed to preserve the independence and confidentiality of counsel.  Failure to timely establish independent representation for subgroups may even jeopardize class certification.  *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997); *Pickett v. Iowa Beef Processors* (11th Cir. 2000) 209 F.3d 1276, 1280.  As the Supreme Court noted in *Amchem, supra*, at footnote 20, the adequacy-of-representation requirement "tends to merge with the typicality and commonality criteria of Rule 23(a)," which impediments can be cured by promptly establishing subgroups.

In the recent antitrust case of *Bradburn Parent/Teacher Store, Inc. v. 3M 2004-2* Trade Cases (E.D., Pa. 2004) at para. 74,523, the district court at first denied certification of an overbroad class that included both purchasers of 3M branded tape and reseller purchasers from 3M of private label tape on the ground that there was a conflict between the overcharge damages theory of the 3M branded tape purchasers and a 'lost profits' theory of damages that the resellers of private label tape "would likely be interested in pursuing." (at para. 74,523).  However, when the class was subsequently narrowed to exclude resellers of private label tape, the district court certified the class.

Moreover, adequacy of representation is a requisite to assuring due process to absent class members.  *Richards v. Jefferson County, Alabama* (1996) 517 US 793, 801, 116 S.Ct. 1761, 1767; *Hansberry v. Lee* (1940) 311 U.S. 32, 42-43, 61 S. Ct. 115, 118-119; *Crawford v. Honig* (9th Cir. 1994) 37 F.3d 485, 487 (affirming the vacation of a judgment for lack of adequate representation of a subclass and approving a sub-class procedure).  Thus, the conflicting interests

6

1    between subgroups not only restricts the authority of counsel for Californians from representing

2    claimants under Other States' law, it is also precluded by Due Process. The burden of proof as to

3    adequacy of representation is on the plaintiff. *Arnold v. United Artists Theatre Circuit, Inc.* 158

4    F.R.D. 439, 448.

5            In *Boucher v. Syracuse University* (1999) 164 F.3d 113 (2d Cir. 1999) at p. 118-119, the

6    Court said with respect to conflicts: "the proper solution is to create subclasses of persons whose

7    interests are in accord," which "the district judge must define and redefine… in response to

8    progression of the case from assertion to facts." In fact, Californians have an "interest in

9    representation of their interests with *undivided loyalty*." *Payne v. Travenol Labs, Inc.* 673 F.2d

10   798, 812 (5th Cir. 1982). (Emphasis added). Accord: *Blackie v. Barrack* (9th Cir. 1975) 524 F.2d

11   891, 908-911. *Evans v. Chicago* (7th Cir. 1982 689 F.2d 1286, 1293) (vacated on other grounds.)

12   (7th Cir. 1989 873 F.2d 1007.

13           The tension in this case between the putative California case and claimants under the

14   differing laws of Other Repealer States and Other Consumer Protection States is as great as that

15   between direct and indirect purchasers, and involves differing claims, differing theories of

16   discovery and prosecution, differing proof as to damages, differing issues for class certification,

17   and requires separate organizations of counsel. Moreover, "…the appearance of conduct

18   associated with the institutions of the law [are] as important as the conduct itself." *Kramer v.

19   Scientific Control Corp.* 534 F.2d 1085, 1088 (3rd Cir. 1976), cert. den. 429 U.S. 830 (1976)

20   (rejecting an *in prose* attorney as class counsel). In light of the availability of settlement classes,

21   such as those reversed in *Amchem, supra,* it is essential to align subgroups upfront.

22           Plaintiffs' counsel, who represents, EMW, Inc., a California business, in the case of *EMW,

23   Inc. v. Philips,* Case No. C-07-2796-SI, Lingel H. Winters P.C. and Girardi & Keese, represent

24   plaintiffs who are *solely* Californians. As a California resident, EMW, Inc. submits this Petition

25   to the Court to establish a properly structured, independent California Indirect Purchaser

26   subgroup with Lingel H. Winters P.C. and Girardi & Keese as interim lead counsel and members

27   of an Executive Committee for the California Indirect Purchaser Subgroup.

28

7

1

DATED:  June ___, 2007                    LAW OFFICES OF LINGEL H. WINTERS
                                          A PROFESSIONAL CORPORATION

2

3

4       By:_____ /S/ *Lingel H. Winters*
                      LINGEL H. WINTERS
                      Attorneys for Plaintiff

5

6

DATED: June 21, 2007                      GIRARDI & KEESE

7                                         /S/ *Thomas V. Girardi*

8       By:_____
                      THOMAS V. GIRARDI

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8